DANIEL B. SANFORD, plaintiff in error, vs. JOHN W. A. SAN-
FORD, defendant in error.

1. A devise to testator's son for life, and after his death, to his lawful
   child or children, and in the event of his leaving no such child or
   children, the property then to revert to the testator's estate, and be
   equally divided among his children, is no attempt at creating an es-
   tate tail.   Children left by the tenant for life, were seized of the re-
   mainder in fee.
2. A tenant in common may sue severally in ejectment, but can recover
   no more than his own interest.

Wills.   Estates.   Ejectment.   Tenants in Common.   Be-
fore Judge BARTLETT.   Baldwin Superior Court.   August
Term, 1876.

Reported in the opinion.

SANFORD & FURMAN ; W. G. MCADOO ; DUBIGNON & WHIT-
FIELD ; T. W. WHITE, by Z. D. HARRISON, for plaintiff in
error.

CRAWFORD & WILLIAMSON, for defendant.

BLECKLEY, Judge.

1. Testator made his will in 1818, and it was admitted to
probate in 1827.   He devised the town lot now in contro-
versy, together with other realty, as follows : " I lend unto
my son, John W. A. Sanford, during his natural life, all
the lands (describing them) together with one lot in the
town of Milledgeville (describing it), which, after his death,
shall descend to his lawful child or children, but in the
event of his leaving no such child or children, the property
aforesaid then to revert to my estate, and be equally divided
among my children."   It does not appear from the record
whether John W. A. Sanford had any child at the death
of his father, the testator, or not, nor is it material.   The
proper construction of the will, in either case, is, that an
estate tail was not created ; but that John W. A. Sanford

took an estate for life, with contingent remainder to any lawful child or children of his that might be living at the time of his death. The estate which he himself was to take is expressly declared to be " during his natural life," and the time of his death is the period apparently appointed for determining the ultimate destination of the property; it is *then* to revert to the testator's estate and be equally divided among the testator's children, in the event John W. A. Sanford should leave no child or children. That the word *then*, as used in this will, is an adverb of time, see *Harris vs. Smith*, 16 *Ga.*, 557; *Dudley vs. Porter*, *Ib.*, 617. In some cases, to settle only the adverbial sense of this word is, however, of little or no consequence—see *Hollifield vs. Stell*, 17 *Ga.*, 286. The case of *Miller vs. Hurt*, 12 *Ga.*, 357, and the authorities therein cited, go to negative the creation of an estate tail by this devise. While in *Miller vs. Hurt*, there was a trust, that circumstance seems to have had no influence on the reasoning of the court, or on the conclusion. See, also, 7 *Ga.*, 76, where there was no trust. The elaborate and well-considered opinion in 3 *Kelly*, 551, may, on a casual reading, be thought to be opposed to the present ruling. But it is enough to say that the will which was there construed, coupled the children with the ancestor directly, and did not, as does the will now under consideration, devise to the ancestor for life, and to the children *after his death*. This difference, according to the authorities, is material. 6 Coke's R., 17; 2 Jarman on Wills, 315; 12 *Ga.*, 360, 361; 28 *Ib.*, 270, 271.

2. The tenant for life, John W. A. Sanford, died in 1870, leaving three sons, one of whom conveyed, by deed, in 1873, his interest in the premises to one of his brethren. The latter, while thus seized of two undivided thirds, brought his action, in 1874, for the recovery of the whole premises, with *mesne* profits. The action was complaint, in the statutory form. The abstract of title annexed to the declaration referred only to the will and the deed above mentioned, and these muniments of title were all that the plaintiff exhibited

Sanford *vs.* Sanford.

at the trial. It did not appear that the plaintiff or his co-tenant had ever been in actual possession. The defendant in the action claimed under a regular chain of conveyances from the tenant for life (who conveyed, in fee simple, in the year 1835) down to himself. Under the charge of the court, the jury returned a verdict in favor of the plaintiff for the premises in dispute, although the plaintiff established title in himself to two-thirds only, title to the other undivided third being in his brother, who was not a party to the action. The recovery should have been confined to the plaintiff's interest —10 *Ga.*, 224; Tyler on Ejectment, 387–388. The *dictum* to the contrary in 42 *Ga.*, 118, was not necessary to the case then under consideration, and is not an authoritative adjudication of the question, though it is in full accord with some of the cases in other states. Compare Pomeroy on Remedies, §220, with Freeman on Co-tenancy, §343. Certain provisions of the Code (sections 3259 and 3358) declare that "A tenant in common need not join his co-tenant, but may sue separately for his interest, and the judgment in such case affects only himself. Any joint tenant, tenant in common, or other person having a part interest in lands or tenements, may have and maintain an action of ejectment or trespass, for the recovery of such lands or tenements, or for an injury thereto, without joining with him any other person as plaintiff; but the judgment in such case shall not affect the rights of those interested in such lands or tenements who are not parties to the suit." In order for the judgment to be thus restricted in its effects, it seems indispensable that what the plaintiff recovers should not be more than is covered by his own title. The co-tenants might be prosecuting their several actions at the same time. Each could not recover the whole, nor could one be rightfully the means of obstructing or defeating the other. The recovery of the whole by one could not be pleaded by the defendant in bar of the other's suit, because that would be to make the judgment affect the other. Neither could a successful defense against the suit of one be used to protect the defendant against a subsequent

action brought by the other.   If the whole could be recovered upon a title to the smallest undivided share, the defendant in the action would be at the disadvantage of having to hazard a trial, in which to lose his case would be to lose the whole land, and to gain it would be to protect only a small part of it.   The co-tenants might thus come at him one at a time, each taking a chance, not at his own share only, but at his own and the shares of all his fellows—certainly of all who had not gone on ahead in the same path.   In construing the Code, we are mindful of the change which it introduces in the general law of ejectment, making judgments in that action generally conclusive.

The judgment is reversed for error in the charge of the court, to the effect that the plaintiff might recover, not for himself only, but for his co-tenant, who was not a party to the action.   If, however, the plaintiff will write off one undivided third, let the judgment, modified in that regard, stand affirmed.

Judgment reversed on terms.