## J. B. TIPPIN ET AL. *v.* GEORGE C. COLEMAN ET AL.

1. TRUST. *Limitation of estates. Remainder.*

   A devise in trust " for the sole and separate use " of the testator's daughter " during her natural life, and at her death to go and vest in her children in fee-simple " creates a life-estate in the daughter with remainder to all her children, and upon a child's death its interest passes to its representatives.

2. SAME. *Limitation of actions. Infancy.*

   A child of the tenant for life, who was a minor at her death in 1867, and her infant orphan grandchildren, are not barred by the Statute of Limitations in 1880 from maintaining a bill to enforce a trust in land, in which the fund so devised has been invested.

3. SAME.  *Estoppel.  Acts of life-tenant.*

The fact that the husband of the life-tenant invested the money in the land without objection from his wife does not prejudice the right of the remainder-men to enforce the trust.

4. SAME.  *Purchaser mala fide.  Pleading.*

If the bill avers that a purchaser from such husband was put on inquiry, and knew the facts before he paid for the land, this is not hurt by the useless statements that he will be bound without notice, and that he pledged his vendor to inform him of secret equities.

5. SAME.  *Married woman.  Prochein ami.*

Objection to the bill filed Sept. 27, 1880, with process returnable the following March, that a married woman is the next friend of the minors is obviated by her continuing in this capacity after Nov. 1, 1880, when the Code of 1880 became operative.

APPEAL from the Chancery Court of Monroe County.

Hon. L. HAUGHTON, Chancellor.

Julia A. Tippin and her husband, John B. Tippin, with Clementius and Lee Walton, orphan minors, by their next friend Julia A. Tippin, on Sept. 27, 1880, filed this bill in chancery against Washington L. Walton and George C. Coleman, and process was made returnable the first Monday in March, 1881.  The bill alleges that the complainants are the sole heirs of Julia A. Walton, deceased, that Julia A. Tippin is her daughter, and that Clementius and Lee Walton are her grandsons, and the sons of Clementius A. Walton, who died before his mother; that Julia A. Walton died in 1867; that in 1849 C. A. Zachry, the father of Julia A. Walton, made his will and died in the State of Georgia, and that it contains the following provision: " My will is, that all the property and money assigned to my daughter, Julia A. Walton, or which may be received by her under any provision of this will, be and the same is hereby declared to be and is truly conveyed to my brother, Asa C. Zachry, in trust for the sole and separate use of my said daughter during her natural life, and at her death to go and vest in her children in fee-simple ; " that in 1855, as a part of her legacy under the will of her father, there was paid to her husband, Washington. L. Walton, the sum of three thousand five hundred and eighty-eight dollars and three cents; that this money was invested by him in land, without objection from his wife, and the title put in his own name ; that on Jan. 26, 1876,

Washington L. Walton conveyed the land to George C. Coleman, who was advised and had the opportunity to know all the facts constituting the interest of the complainants in said land, and before the purchase-money was paid he was fully informed of the nature and character of their interest; that he exacted from Washington L. Walton pledges that there were no secret equities in the land, and that the land is liable even if he had no notice; that at the time of the death of Julia A. Walton, her daughter, Julia A. Tippin, was under the disability of minority, and was married afterwards, before attaining her majority; and that the other complainants were then and are now minors. The prayer is, that the title to the land be divested out of Coleman and vested in the complainants, or that the land be sold, and the proceeds be applied to the payment of the amount due the complainants with interest, and for general relief. George C. Coleman demurred upon the grounds, that a married woman is the minors' next friend; that, under the will, the complainants have no estate; that they are barred by limitation of ten years; that the allegation of notice is too vague; and that the bill is without equity. From a decree sustaining the demurrer, the complainants appeal.

*R. Davis*, for the appellants.

1. The infants can maintain this bill by their next friend, although she is a married woman. They must sue by *prochein ami*. Story Eq. Pl. §§ 53, 58, 70; Mitford Eq. Pl. 103; Cooper Eq. Pl. 29, 109; *Jongsma* v. *Pfiel*, 9 Ves. 357; *Williams* v. *Wynn*, 10 Ves. 159; *Tappen* v. *Norman*, 11 Ves. 563; *Hill* v. *Smith*, 1 Mad. 290; Edwards on Parties in Equity, 193–211. The only objection to a *feme covert* which could have existed was, that her separate estate would not formerly have been chargeable with costs. But the next friend was never ultimately liable for the costs. *Brown* v. *Hull*, 16 Vt. 673; *Sinclair* v. *Sinclair*, 13 M. & W. 640. Before the return day, the Code of 1880 became operative, and under it she is liable for the costs; so that now the case may be continued in her name.

2. Under her father's will Julia A. Walton took a life-estate with remainder to her children in fee, which vested at her death, or *eo instanti* with the conveyance. The rule in Wild's

Case rather than that in Shelley's is operative here, for this is a conveyance by will to Julia A. Walton and her children, and as she had children living the remainder vested at once. The word " children " is not a word of limitation, but is a word of purchase. 2 Williams on Executors, 1098 ; *Hubbard* v. *Selser*, 44 Miss. 705. If another meaning is sought to be imposed on it in a particular will, *deflecting* it from its general and appropriate sense, that must be made out by clear and unequivocal evidence. *Gray* v. *Bridgeforth*, 33 Miss. 312. Use of the words, " to her children in fee-simple " cannot have the effect to .change the general meaning of the word " child " so as to make it in this will a word of limitation. The effect of giving to Mrs. Walton for life and upon her death to her " children " is to give a fee-simple. Then to declare in the *will* what the law deduces from the language used cannot be error, nor can it *deflect* the meaning of words. This view is fully sustained by the case of *Jeffery* v. *Honywood*, 4 Mad. 398, and by Judge Story in the case of *Sisson* v. *Seabury*, 1 Sumner, 235.

3. The opposing counsel in their argument of the Statute of Limitations set out with a false proposition in law. The will does not make the property go to and vest in the children of Mrs. Walton upon her death. The *death* of the *donor* vested the legal title in her children. and upon her death this legal title drew to it the possession, it being a right incident to the legal title. Two of the complainants are minors, and the statute has not yet begun to run as to them. But suppose the opposing counsel are right in their position, that the children of Clementius A. Walton did not and could not inherit under this will, and that the whole estate vested in Mrs. Tippin upon the death of her mother. Then they have not shown a state of facts which would bar her right to recover. The Statute of Limitations could not commence running against her until she was twenty-one years of age, and after it had commenced running she had the whole time allowed by law, say ten years. Mrs. Tippin's age is not given. Nothing in the facts of this bill shows that more than ten years elapsed after she became of age, before the commencement of this suit. *Watts* v. *Gunn*, 53 Miss. 502.

*Houston & Reynolds*, for the appellees.

1. Julia A. Walton took an estate in fee in the property which was given her by the will of her father. Under the rule in Shelley's Case, she took, at common law, an estate tail, and under the statutes of Georgia, an estate in fee. *Carradine* v. *Carradine*, 33 Miss. 698; *Edmondson* v. *Dyson*, 2 Ga. 307; *Wiley* v. *Smith*, 3 Ga. 551. The estates to Mrs. Walton and to the children are both of the same quality, both legal or both equitable, and may therefore coalesce under the rule in Shelley's Case. 2 Minor Inst. 342, 343. If the bequest had been to Mrs. Walton for life, and at her death to the heirs of her body, there would be no doubt as to the estate vested in Mrs. Walton. The use of the words " children in fee-simple " seems to render the nature of the estate somewhat doubtful. As a general rule, the word " children " is a word of purchase and not a word of limitation; but a meaning different from the ordinary one will be put upon the words when that is necessary to accomplish the testator's intention. Whatever may be the words used, if an estate is devised to one, either expressly for life or indefinitely, and the intention of the testator is manifested to provide for all the offspring of the first taker, or for the whole of any line of such offspring, in every successive generation the first taker gets an estate tail. *Davie* v. *Stevens*, 1 Dougl. 321; *Seale* v. *Barter*, 2 B. & P. 485; *Powell* v. *Brandon*, 24 Miss. 343; *Mellish* v. *Mellish*, 2 B. & C. 520; *Wollen* v. *Andrewes*, 2 Bing. 126; *Pierson* v. *Vickers*, 5 East, 548; *Doe* v. *Cooper*, 1 East, 229; *Wood* v. *Baron*, 1 East, 259; *Wiley* v. *Smith*, 3 Ga. 551; *Jones* v. *Jones*, 20 Ga. 699; 2 Minor Inst. 349–351; 3 Jarman on Wills, 182, 247.

2. Nothing in the will shows that the testator used the term " children " in the sense of " issue," or that it was his intention to comprehend " grandchildren," but the term was used in its ordinary acceptation, and ordinarily and properly, the term does not include " grandchildren or issue generally." Bouvier Law Dic. tit. " children." The property was at Mrs. Walton's *death* to go and vest in her children in fee-simple. It vested in those who were children at the time of her death. Then Julia A. Tippin, the only child living at that time, alone inherited the estate in fee, and she is barred by the limita-

tion of ten years. If she relies upon infancy, she must aver
that this disability continued up to within ten years of the
filing of the suit, and the allegations of the bill do not show
this. Subsequent coverture does not help the matter. It is
the disability existing at the time the right of action accrues,
which will save the bar of the Statute of Limitations, and one
subsequently occurring cannot be tacked to it to prolong the
time and prevent the bar. *Watts* v. *Gunn*, 53 Miss. 502. If
Mrs. Tippin is barred, or if she fails to bring herself within
any of the exceptions to the statute, the demurrer was prop-
erly sustained.

3. Walton, having used the money in the purchase of the
land with the consent of his wife, became debtor to her and to
the children, if they had the remainder in fee, for the amount
received by him. *Gibson* v. *Foote*, 40 Miss. 788. If he was
the debtor as to the fund, either to his wife or to his children,
George C. Coleman cannot be charged with this debt, nor
can the amount be charged upon land bought by Walton with
the money, and subsequently sold to Coleman. Taking the
most favorable view of the complainants' case, there was cer-
tain money in which their mother had a life interest, and they
had the remainder in fee. The mother loaned the money to
her husband, and he purchased certain land and used the money
in part payment. He subsequently sold the land to Cole-
man. Beyond controversy, the land is not chargeable with
the debt.

4. It is attempted in the bill to aver that Coleman purchased
the land in bad faith; at least, with knowledge of the pretended
equity of the complainants. We deny the sufficiency of this
allegation. It is averred that pledges which George C. Cole-
man exacted from Washington L. Walton were no protec-
tion against the rights of the complainants; that, if he had no
knowledge of their rights, they could still pursue their prop-
erty into the land. This is not an averment that Coleman
had knowledge of the pretended secret equity of the com-
plainants, or knowledge of facts which would put him upon
inquiry. If Coleman is not charged with knowledge actual
or constructive of this equity, the demurrer should be sus-
tained.

5. The minors, who appear as complainants in the bill, sue by Mrs. Tippin as their next friend. Mrs. Tippin is a married woman. As next friend she is responsible for costs. A married woman, at common law and under our statutes before the Code of 1880, could not sue as the next friend of a minor. She cannot bind her separate estate by assuming any such relation.

*R. O. Reynolds,* on the same side, made an oral argument.

CAMPBELL, C. J., delivered the opinion of the court.

Mrs. Walton took an estate for her life under the will of her father, with remainder to all of her children, who severally took a vested remainder, and on the death of any of them its interest passed to its representatives, and therefore the complainants were entitled to the remainder, — Mrs. Tippin in her own right, and the other complainants in right of their parent. *Jones* v. *Jones,* 7 Ga. 76; *Miller* v. *Hurt,* 12 Ga. 357; *Jennings* v. *Parker,* 24 Ga. 621; *Jossey* v. *White,* 28 Ga. 265; *Jackson* v. *Coggin,* 29 Ga. 403; *Goss* v. *Eberhart,* 29 Ga. 545; *Hubbard* v. *Selser,* 44 Miss. 705; 1 Roper on Legacies, 584; 4 Kent Com. 205, 206; 2 Redfield on Wills, 231 *et seq.*; 2 Williams on Executors (6 Am. ed.), 1176.

The complainants are not barred by the Statute of Limitations, because when their right of action accrued by the death of the tenant for life they were all infants, and two of them are yet. *Masters* v. *Dunn,* 30 Miss. 264; *Anding* v. *Davis,* 38 Miss. 574.

The remainder-men have the right to follow the fund which was invested in land, and are not to be prejudiced by any act of the tenant for life in consenting to the investment expressly or impliedly.

The bill sufficiently avers knowledge by the appellee of the rights of the complainants, and the averment is not hurt by the useless statements accompanying it.

That Mrs. Tippin continued to be the next friend of the infant complainants after the Code of 1880 became operative disposes of the objection to the bill on the ground that she is a married woman.

*Decree reversed, demurrer overruled, and cause remanded.*