DAVID P. BUTLER ET AL. *v.* STATE OF MISSISSIPPI, USE OF
FRANKLIN COUNTY.

1. COUNTY OFFICERS. *Tax collector. County treasurer. Receipt. Fraud.
   Mistake. Parol evidence.*

   An official receipt of a county treasurer given a tax collector is not
   conclusive in a controversy between them as to whether the money
   had been paid, although the issue was made by cross-bill of the
   treasurer in an equity suit begun by the state, for the use of the
   county, against both officers and the sureties on their respective
   official bonds; and in such suit on such issue parol evidence is
   admissible to show that the receipt was obtained by fraud and
   delivered by mistake.

2. SAME. *Treasurer's official bond. Sureties.*

   An official receipt given by a county treasurer to the tax collector is
   only *prima facie* evidence that the money was paid, as against the
   sureties on the treasurer's official bond, in a suit brought thereon
   by the state for the use of the county.

FROM the chancery court of Franklin county.

HON. WILLIAM C. MARTIN, Chancellor.

The state, suing for the use of Franklin county, appellee,
was complainant in the court below; Butler, county treasurer,
and the sureties on his bond, appellants, and Proby, tax col-
lector, and the sureties on his bond, were defendants there.

From decrees sustaining a demurrer of Proby, tax collector,
to the cross-bill of Butler, treasurer, and the final decree in
complainant's favor against Butler, treasurer, and the sureties
on his bond, appeals were prosecuted to the supreme court.

Butler was the treasurer of Franklin county, and Proby the
sheriff and tax collector thereof.   On the 6th of January, 1902,
there was a settlement between them, Butler giving Proby re-
ceipts for amounts received.   Among receipts delivered to
Proby by Butler was one for $2,203.84, poll tax money.   But-

ler afterwards discovered that there was a discrepancy of
$2,203.84 between his books and his cash.   He called on Proby
and explained the matter, claiming that Proby had not in fact
paid him this money called for by the receipt and receipt war-
rant, and at the same time requested Proby to count his cash,
in order to ascertain whether or not he had the money.   This
Proby did not do, but offered the books to Butler.   This suit
was brought for the use of the county in the chancery court
against Butler and the sureties on his bond, and Proby and his
bondsmen for the purpose of ascertaining which one of the
officers was liable for the amount, and for a decree against him
and his sureties, or whether they were both liable, and in that
case for decree against both and their sureties.   To this bill
Butler answered, and made his answer a cross-bill against
Proby and his bondsmen.   Proby demurred to the cross-bill,
and the demurrer was sustained, and the cross-bill against
him and his sureties was dismissed.   There was a final decree
for complainant against Butler and his sureties.

*Mixon & Butler* and *Price & Webb*, for appellants.

A receipt is only *prima facie* evidence of payment. *Dunbar et al.* v. *Newman*, 46 Miss., 231; *Phœnix Ins. Co.* v. *Hoff-heimer*, *Id.*, 645; *Buckels* v. *Cunningham*, 6 Smed. & M., 358; *Matlock* v. *Livingston*, 9 Smed. & M., 489; *Ohleyer* v. *Bern-heim Bros.*, 67 Miss., 75 (7 South., 319); *Cocke* v. *Blackbourn*, 57 Miss., 689; *Swann* v. *Southern Express Co.*, 53 Miss., 286; *Millsaps* v. *Bank*, 71 Miss., 361 (13 South., 903).

Money paid under mistake of fact can always be recovered. 15 Am. & Eng. Ency. of Law (1st ed.), 677.

Receipts of this character are not public records. *Harring-ton* v. *State*, 54 Miss., 490; *Howe* v. *State*, 53 Miss., 57; *Hemingway* v. *State*, 68 Miss., 371 (8 South., 317); *Gloster* v. *Harrell*, 77 Miss., 793 (23 South., 520, 941; 27 South., 609); 19 Am. & Eng. Ency. Law, 1111, 1119, 1120; *Wall* v. *Monroe Co.*, 103 U. S., 74–79 (26 L. Ed., 430).

*Theodore McKnight*, for appellee.

The cross-bill presented no grounds for relief, but set up matters purely defensive and fully asserted in the answer. *Buckingham* v. *Wesson*, 54 Miss., 526.

The cross-bill could be of no effect, and was useless so far as Franklin county was concerned, and so far as the treasurer was individually concerned, it set up matters purely defensive and fully asserted in the answer.

And again, the prayer of the cross-bill, so far as the treasurer was concerned, was for the correction and cancellation of public records made by himself, by disputing its correctness, which he, at least, cannot be permitted to do. While it is a general rule of law that an ordinary receipt may be explained, or qualified, or disputed, by a parol testimony, yet this rule does not apply to a receipt such as is shown in this case, or, in other words, the document, though in the form of a receipt, is not such a receipt as may be controlled by parol testimony, but is a public record and cannot be disputed, explained or varied by parol evidence. Our statute, code 1892, § 910, expressly provides and requires that one of the receipts signed by the treasurer for money paid into his hands shall be filed in the office of clerk of the board of supervisors, and "when a statute directs that copies of certain documents be made and filed in a public office, such copies become public records." 20 Am. & Eng. Ency. Law (1st ed.), 507, 508. "Nor will parol evidence be admitted to explain or vary such record." *Id.*, 511; *Cabott* v. *Britt*, 36 Vt., 349.

Butler should not have been permitted to offer parol evidence from any source, and most especially should he himself not have been permitted to testify in contradiction of a record which he himself had made. *Johnston* v. *Wallace*, 53 Miss., 331.

*H. Cassedy* and *S. L. Proby*, on the same side.

The statute provides for the collection of taxes and the manner in which the money shall reach the treasury.

The chancery clerk is the county auditor, and his duties, with reference to the matters here in controversy, are set out between §§ 325 and 337 of the code of 1892, and the duty of the tax collector is set forth in § 3840.

First. When the taxes are collected each month, the tax collector makes a sworn report, in writing, to the county auditor. (§ 3840.)

Second. The county auditor examines, audits and settles the account (§ 332) and issue receipt warrants for the payment of the money into the county treasury (§§ 331 and 332), and charges the tax collector with the amounts of the respective receipt warrants.

In this manner the amount to be paid is ascertained; made up from the report of the tax collector, filed with the auditor, verified and audited by the auditor, and authority given to pay the amount into the county treasury, which must be done within ten days from the first of the month. The tax collector is charged with the amount on the books kept by the auditor. Armed with these receipt warrants the tax collector is ready to make his monthly settlement as required by law, and the treasurer is bound to receive the money, and then

Third. The tax collector presents himself, with the receipt warrants and the money, or its equivalent, and it is then lawful for the treasurer to receive the same. (§ 910.)

Fourth. When the money is paid, the treasurer issues his duplicate receipts, one of which is filed with the chancery clerk or county auditor. (§ 910.)

Fifth. The duplicate is presented to the county auditor, and he credits the tax collector with the amount (§ 332), and charges the treasurer therewith (§ 332) in a well-bound book. (§§ 328–330.)

Thus the money finds its way safely from the people to the county treasury by this admirable system of checks, and the fact is solemnly recorded in the office of the proper officer whose "books" show the transaction and the vouchers, writings and

evidence, all of which are in his keeping. This record is made by the joint acts of these county officers, and when the treasurer is charged on his duplicate receipt, the record of that settlement is finished, completed.

All these essentials were complied with in this case; every necessary step taken by the tax collector, auditor and treasurer. The money is equally well protected after it reaches the hands of the treasurer. It must be paid out after certain formalities are complied with, and a warrant issued by the authority of the board of supervisors. He exchanges it for these warrants, and returns them with his periodical reports as they are allowed and canceled by the same board that issued them. When the board of supervisors passes upon his report, the chapter is ended, the account closed and the books balanced. Would a person to whom a warrant had been issued, who delivered it to the county treasurer, who reported it as a voucher and had it canceled, be heard to prosecute a claim against the county on the ground that the treasurer did not in fact pay him the money? Could he sue the bondsmen of the treasurer for this amount?

In this case the record stood unquestioned and unimpeached for nearly three months when the treasurer claimed that he discovered he was a defaulter and to save himself and his bondsmen he claimed that he did not receive a part of the money, to-wit, $2,203.84 evidenced by the receipt warrant for the poll tax, and now seeks to prove the negative fact by parol testimony, dehors the record and in direct contradiction thereof. The court will see, on reflection under the decisions in our own state, that this is the only excuse a defaulting county treasurer could make with any chance of success. If the tax collector was a defaulter, could he deny that he had received the money from the taxpayers in the very face of his receipts?

Is there no protection accorded to the officer as an officer? Are his official acts to be impeached by himself and the records of the county, carefully compiled according to the letter of the

law, set aside so that he may be able to cover up his negligence, his mistakes and defalcations? If the treasurer can impeach these official acts in defense of a suit against him for the money for which he has made himself responsible, so can the auditor, the tax collector, the board of supervisors and the assessor.

An ordinary receipt between individuals is evidence of the most satisfactory kind. To do away with its force, the evidence should be clear and convincing and the burden of proof rests upon the party attempting the explanation. Where the evidence of each side is entitled to the same weight the receipt will stand. 10 Am. & Eng. Ency. Law (1st ed), 1129, and note; Abbott's Trial Ev. (2d ed.), 1025, and notes 5 and 6; also *Ib.*, note p. 321, citing *Hall* v. *Hall*, 1 Mass., 101.

But the receipts which are sought to be contradicted in this case are more than mere receipts of a payment of money. They should be, and are, more than *prima facie* evidence. They become parts of the record, and are required by law to be given, and upon them is based the charge against the responsible officer. They are official records, or official writings and papers, and should be entitled to more weight as evidence than the private transactions between individuals, and cannot be contradicted by parol. They should verify themselves and be conclusive as against the officer who made them in pursuance of his duty. 17 Am. & Eng. Ency. Law (1st ed.), 420, and note on p. 422, entitled "Official Records and Writings Generally."

Could the treasurer impeach his official act? It has been held that a juror cannot impeach his verdict (57 Miss., 28), and that the record of a court cannot be impeached by an officer who made it (51 Miss., 652; 33 Miss., 653; 28 Miss., 398). "The presumption of the performance of duty by an officer is conclusive and the officer cannot impeach." Abbott's Trial Ev. (2d ed.), 246, 247, 248.

The return of an officer cannot be impeached by himself.

1 Rice on Ev., 220.   " He is intrusted by law with the performance of a duty of which a record has been made, and it imports absolute verity."   1 Rice, 122, 217, 218, 219.

Not only was the record in the county made from these acts of these officers, but the treasurer, as required by § 911 of the code, reported the amount to the auditor as poll taxes collected, and upon this basis the distribution of the common school fund was made to Franklin county.

Argued orally by *J. H. Price*, for appellant, and by *Theodore McKnight* and *S. L. Proby*, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

It is essential to a correct decision of this case that the exact attitude of the parties should be held accurately in mind. This is not a suit at law by the state against the tax collector and his sureties; nor is it a suit at law against the treasurer and his sureties. It is not a proceeding at law at all. It is a bill in chancery, wherein the state, not knowing which is liable to it, whether the tax collector or the treasurer, has impleaded both of said officials and the sureties on their respective bonds, the purpose being to ascertain which one is liable, and have a decree against that one and his sureties, or whether both are liable, and in that case to have appropriate decrees against both and their sureties. To this bill the treasurer made answer, and making that part of his answer seeking affirmative relief a cross-bill against the tax collector, his codefendant—not defending with him against the state, but occupying a hostile attitude towards him—prayed the cancellation of the receipt warrant for the poll-tax money, $2,203.84, given by him to the tax collector, and the surcharging and correction of the tax collector's books, and to have a count made of the money in the hands of the tax collector, on the ground that said receipt warrant, as between him and the tax collector, had been executed on his part by mistake, and obtained by the tax col-

lector on his part by fraud.    The tax collector demurred to this cross-bill, and the court below sustained his demurrer, and then dismissed the original bill against the tax collector, and rendered a final decree against the treasurer and his sureties for the amount of said poll tax receipt warrant, interest, and costs.

It will thus be seen that equity had the whole matter before it, and all the parties in any way interested, and should have administered complete relief, not only as between the state and both officials, occupying an adversary position towards the state, but also as between the two officials who occupy adversary relations to each other.

The competency of the parol testimony offered by the treasurer to show that the receipt warrant for the poll-tax money, $2,203.84, had been executed through mistake by him, and obtained from him by fraud of the tax collector, is to be solved, therefore, not on the same precise ground on which it would be solved were this a suit at law on the treasurer's bond by the state, and the question alone whether, in that sort of suit, the treasurer would be concluded by his receipt, and not allowed to explain or contradict it.    This last question—whether, in such suit, testimony, might be introduced by the treasurer— it is unnecessary now to decide, and the only sound rule for any court is to limit decision to that only which the necessity of the case requires.    It is only in this way that dicta can be avoided, and accuracy and precision as to what has been adjudged in any case secured.    Looking, therefore, to the attitude of the case as between all parties as above shown, we think it is clear that it was competent in this proceeding, being such as we have described it, for the treasurer to show by parol evidence that the receipt was executed through mistake on his part, and as a result of fraud on the part of the tax collector.

In this tripartite controversy, it was the business of the court to ascertain, as between the treasurer and the tax collector, which was liable, and for that purpose, surely, this tes-

timony was competent, and this is the extent of our decision
on this proposition.    As somewhat aiding the solution of this
question, generally, we refer to two cases which our own re-
searches have brought to light, not referred to by any of the
counsel in the case.    They are *Van Ness* v. *Hadsell*, 54 Mich.,
at page 562 (20 N. W., 585); *Williams* v. *Fitzpatrick, Gov-
ernor*, 20 Ala., 794 to 796, inclusive.    Reference may also be
had to our own cases of the *State* v. *Oliver*, 78 Miss., 9 (27
South., 988), and *Mann* v. *Yazoo City*, 31 Miss., 574.    The
last two cases are cited by counsel.    It is, of course, thoroughly
settled that the receipt warrant executed by the treasurer is
only *prima facie* evidence against the sureties.    See authorities
cited by counsel for appellant, especially the note of Mr. Free-
man to *Coleman* v. *Pike County, Ala.*, in 3 Am. St. Rep., at
page 749.    And here it is to be specially noted that this decree
is rendered not only against the treasurer, but his sureties.

We have made thus full and clear the peculiar attitude of the
parties to this case with respect to each other on the very un-
usual state of case made by the pleadings in order that our
ruling as to the competency of the parol evidence to explain
the receipt warrant may be understood exactly as we limit it,
and in order also to make it clear—as we think it must be—
that the court below held the view that the receipt warrant was
conclusive not only against the treasurer, but also against his
sureties, and that it could not be impeached by the sureties or
the treasurer, even on the ground of mistake or fraud.    It is
true the learned court below did not rule expressly on the ob-
jection made to the parol proof offered to explain the receipt
warrant; but we think it is clear from sundry rulings against
the treasurer as to the admission and exclusion of the testimony
in the current course of the trial, and especially from the action
of the court in sustaining the demurrer to the cross-bill, that
the view of the learned chancellor must have been as we take
it to have been.    If so, grievous error was committed against
the appellants; and, furthermore, the decree would, in that

view, be required to be dealt with not simply as a finding on the facts, but as a ruling on the evidence. Thus much as to the law of the case.

Turning now to the evidence in the case, since there must be a new trial, we have only this to say: That the tax collector ought at once to have counted the cash when the demand was made on him. He had the amplest time in which to have made that count before the trial of the cause in the chancery court. We wish carefully to abstain from any comment upon the tes-. timony in the case beyond saying this: that, on the proof in the record, justice and fair play imperatively require that cash to be counted.

*Reversed and remanded, with leave to the tax collector to answer the cross-bill in thirty days from the filing of the mandate in the court below.*